## Callahan v. City of Philadelphia et al.

*Martin Feldman*, of *Horenstein, Feldman & Harvey*, for plaintiff.

*David J. Smyth*, city solicitor, and *Thomas B. K. Ringe*, assistant city solicitor, for defendants.

BROWN, JR., J., February 7, 1933.—This case was argued before the court in banc on defendants' motions for a new trial and for judgment n. o. v. following a verdict for plaintiff for $3470.18 in the assumpsit action, and for plaintiff in the mandamus proceeding, directed by the trial judge in order to fix the damages. Counsel for the parties agreed at the conclusion of the testimony that there were no disputed questions of fact to submit to the jury. The two issues were tried together by agreement of the parties in order to facilitate their disposition, and the questions raised appear to be the same.

Plaintiff was appointed a police officer of Philadelphia on September 19, 1923, and served as such until his suspension by the director of public safety on January 18, 1930, for neglect of duty, i. e., while on street duty leaving his beat and going to his home, where he was found by his superior officer in bed, thereby failing properly to patrol his beat. On February 28, 1930, the Civil Service Commission found him guilty of this charge and directed that he be discharged from the service.

On August 14, 1930, plaintiff presented a petition to the commission requesting "a rehearing, not with the thought in mind of attempting to disprove any of the said charge, but solely to place himself at the mercy of the commission," in support of which he averred, inter alia, what he had been doing since his discharge, that he had "abstained entirely from the use of intoxicating liquor"

and that he "believed if granted a rehearing he will be prepared to render such testimony as will warrant the commission in reinstating him."

On September 10, 1930, the date fixed by the commission for the rehearing requested, certain testimony was taken, following which the commission reinstated him with forfeiture of pay from date of dismissal to date of reinstatement. However, the director of public safety refused to assign him to duty, and so, on March 15, 1932, he brought this action in assumpsit, and on April 9, 1932, he filed his petition for the writ of alternative mandamus.

Paragraph 3 of rule IX of the commission provides:

"Any policeman or fireman having been dismissed under the provisions of rule XIV [providing for removal or discharge after hearing upon written charges] may present to the Civil Service Commission a petition in writing, under oath, containing an averment that the evidence which he desires to have heard was not presented at his original hearing, or he may set forth some new or after-discovered evidence or any other fact upon which he relies, or he may give reasons for his belief that the original judgment or decision of the commission was in error."

Although plaintiff did not set forth in his petition that he desired to have heard evidence which was not presented at the original hearing or new or after-discovered evidence, or the belief, with his reasons therefor, that the original judgment or decision of the commission was in error, he did aver facts upon which he relied in placing "himself at the mercy of the commission," and the belief that "if granted a rehearing he will be prepared to render such testimony as will warrant the commission in reinstating him."

True, the commission's rules are more than mere regulations, having, by virtue of their adoption, under section 13 of article XIX of the Act of June 25, 1919, P. L. 581, 616, 617, "the force and effect of law," and the commission being without power to amend, waive or change them except "after public notice and hearing:" Niblo v. City of Philadelphia et al., 18 D. & C. 79. However, "niceties of form in procedure . . . have no [proper] place in the investigation of charges by such a body as the Civil Service Commission:" Crofut v. Philadelphia, 276 Pa. 366, 367, and although plaintiff's petition may not be couched in the precise phraseology of the rule, yet it comes within its terms.

The Civil Service Commission may reconsider a sentence already imposed, but "the only manner by which this could be accomplished was a rehearing:" Goldberg v. Philadelphia et al., 279 Pa. 356, 360, and defendants contend that what took place before the commission on September 10, 1930 (the date fixed by that body for the rehearing requested in plaintiff's petition), was not a rehearing, i. e., that it was not a "real new trial at which new evidence is produced and the facts and the circumstances of the case examined anew," relying on the decision in that case, where a rehearing was granted and "the after-discovered evidence clearly showed that an error was committed" (page 360). In that as in this case, the commission modified the sentence of dismissal to one of suspension, but in this there is no averment and no proof of after-discovered evidence; plaintiff merely placed "himself at the mercy of the commission," averring and proving that he had not used intoxicating liquor since his discharge.

At the original hearing on February 28, 1930, when plaintiff testified that he had been sick since January 18, 1930 (the date of his absence from his beat), the chairman of the commission stated:

"We will give you six months' leave of absence. We will discharge you. See if you can get better within six months."

Then on September 10, 1930, the two commissioners present stated: "We told you that we wanted to suspend you but we wanted to give the director an opportunity to put in a man. We told you we would give you a chance to file a request in six months," and "in view of this additional testimony and your behavior, we will order your reinstatement." This additional testimony had to do with whether plaintiff had been drinking since his discharge. Of course, this was not a new trial, but a new trial was not asked for or granted. It was, however, a reconsideration of the sentence imposed, and the right of the commission to take such action is recognized and approved in Goldberg *v*. Philadelphia et al., supra, pages 359 and 360. In that case it appears (page 361) that the commission "became convinced by the production of legal testimony, that it had erred, and the penalty imposed . . . was excessive." In this case it appears from the statements of the commissioners that what they intended was the suspension of plaintiff for six months, but instead of making such an order they discharged him, and then when he presented his petition for a rehearing, testimony as to his conduct was taken. Although this was meager, it was "legal testimony," and such as would be taken into consideration by a trial tribunal in determining the severity of the sentence or in mitigation of punishment originally imposed. The commission also had before it letters bearing upon plaintiff's character. "Even if the testimony were technically hearsay, its character in this respect would not be fatal to the finding of the Civil Service Commission; . . . strict enforcement of the rules of evidence have no [proper] place in the investigation of charges by such a body as the Civil Service Commission:" Crofut *v*. Philadelphia, supra, page 367.

Defendants contend that by its order of reinstatement the commission cannot do more than place his name upon the eligible list. This is a list supplied by the commission from which the director of public safety may select patrolmen to fill vacancies, being allowed the limited amount of discretion of skipping no more than every other name. However, it has not been the practice of the commission to include in the list of eligibles those who have been suspended and ordered reinstated, and the superintendent of police testified that no reference is made to this list in assigning a patrolman to duty when the commission reinstates him. As there is no provision in the rules of the commission covering this situation, the established practice should prevail in this instance, providing, of course, that there is a vacancy for a patrolman in the Bureau of Police. The testimony indicates that there have been one or more vacancies since the commission ordered his reinstatement, and so there is no necessity to discuss what the situation would be if there had been none. However, the desirability of a rule clarifying the situation is apparent.

The action in assumpsit was commenced on March 15, 1932, and the mandamus proceeding on April 9, 1932. Thus upwards of eighteen months elapsed from the date of the commission's order of September 10, 1930, before plaintiff took legal steps to establish his rights. This, defendants contend, was laches upon his part. However, it is not disputed that immediately after the commission's order of reinstatement plaintiff reported for duty and continuously thereafter demanded it. If a man had been appointed to take his place, it might well be said that his permitting another to occupy his position and draw pay for his services therein would be unfair, but the record does not show this to have been done. As there have been always one or more vacancies for patrolmen since the date of the commission's order of reinstatement, the defendants have not been prejudiced by his delay.

Defendants state in their brief that the motion for a new trial "is a protective measure, the pressing of which will naturally be determined by the ruling

of this court on the various efforts by plaintiff to introduce various phases of testimony which were received by the court subject to the objection of the defendants." These pertain to the introduction in evidence of the record of the Civil Service Commission, and we are in accord with the views expressed by the trial judge that the entire record was properly admissible to show what actually took place before the commission and thereby enable us to pass upon the issues presented.

### Order

And now, February 7, 1933, a new trial is refused. Defendants' motion for judgment n. o. v. is dismissed and judgment is entered on the verdict.